WILLIAM GREGORY, Appellant, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

**Ejectment of Passenger.** Where a passenger takes a dog with him into a passenger car, contrary to the rules of the railroad company, and refuses to remove him when requested, the conductor is justified in removing both from the car in a proper manner, though the passenger has paid his fare.

**REASONABLE:** *Court and jury.* The reasonableness of a rule of a railway company prohibiting a passenger from having a dog with him in its passenger coach, and exacting a charge for carrying dogs in the baggage car, is a question of law for the court; and its holding that such rules are reasonable, is affirmed.

**RECOVERY OF TICKET.** A passenger who is removed from a railway train on account of his refusal to comply with a reasonable regulation of the company, forfeits his rights under his ticket, and cannot recover the value thereof.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

`SATURDAY, DECEMBER 12, 1896.

ACTION at law, to recover damages for being ejected from one of defendant's passenger trains. At the conclusion of the evidence on behalf of plaintiff, the court sustained defendant's motion for a verdict, and rendered judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*J. P. Conner* for appellant.

*T. J. Garrison* and *Hubbard & Dawley* for appellee.

GIVEN, J.—I. The grounds of defendant's motion for a verdict were, that the evidence shows that the plaintiff was ejected from the train lawfully, and without unnecessary violence, insult, or injury; that

the requirement that he remove his dog was reasonable, and one which the conductor had a right to enforce by removing the plaintiff; and that there is not sufficient evidence to sustain a verdict for the plaintiff. The errors assigned are, that the court erred in sustaining this motion on each and every ground thereof, and in not submitting the case to the jury.

But two witnesses were examined, namely, the plaintiff and H. Williams, and the facts testified to are, in substance, as follows: In September, 1893, the plaintiff, in response to a telegram from his wife to come to their home, near Kimball, S. D., got on board one of defendant's passenger trains at Sutherland, Iowa, for Hawarden. Plaintiff did not have time to buy a ticket, and consequently paid his fare to the first station, where, by the direction of the conductor, he purchased a ticket for one dollar and forty-five cents to Hawarden, which ticket he surrendered to the conductor. When he boarded the train he had with him a bird dog, led by a cord, which he took with him into the smoking car, and placed between the seats where he sat. After plaintiff had given up his ticket, the brakeman, observing the dog, said to the plaintiff: "Why don't you put the dog in the baggage car? If you want to ride with a dog it is no reason other people should." After that, plaintiff asked the conductor, as he was passing, if his dog could ride in there, and was told: "We have been forbidden to let people put their dogs in the coach. They have to be put in the baggage car;" and told plaintiff to put him there at Alton. At Alton plaintiff took his dog to the baggage car, and was told by the baggage man that he must pay fifty cents to put the dog in the car. Thus far we have the testimony of the plaintiff alone, and as to what followed, we have also the testimony of Mr. Williams, who was at the

baggage car.   Plaintiff says the baggage man told him
it would cost fifty cents.   That he (plaintiff) told the
baggage man that he thought he had only money
enough to get home, and that he replied: "I can't
help it.   I can't carry him then;" and that plaintiff
went back to his seat in the smoking car, taking the
dog with him.   He further testified as follows: "In
a few minutes the conductor and brakeman both came
in.   The conductor said: 'I thought you were going
to put your dog in the baggage car.'   I said I was but
they would not take him without my paying fifty
cents, and I did not have money enough only to pay
my way home to Brule county.   He said: 'Well, you
had better dig up, or you will have to get off.   You
can't take your dog on this train.'   I told him to give
me my ticket back, and he said he would not do it, or
could not do it, I do not know which; but anyhow he
took hold of me, and said: 'Dig up, or get off here,'
and took hold of my arm, and said: 'Come along.'   I
was sitting on the left-hand side of the car, and I took
hold of the seat, and held, and he pulled on me, and I
held to the seat, and he was a small fellow, and he
didn't get me loose.   Then the brakeman attempted
as though he was going to take hold of me too.   The
conductor seemed to get mad or excited or something,
and said: 'I will show you, if you don't get off,' and
went out the door, and in a few minutes he came in
with the city marshal, who walked up to me, and said:
'I guess, old man, you will have to come here,' and
took hold of me.   The man had a star on his coat.
When I saw the star, I told the man I had a first-
class ticket to ride on the train.   The conductor said:
'Well, hurry up, and take him off.'   He got hold
on the other side, and the marshal says: 'I am
an officer,' and reached his hand behind him, as
though he was going to draw a weapon or
something, and I said· 'I guess you have the

authority to arrest me, and take me off, and I will go.' I got on the platform, and the marshal stood by me, and the conductor waved the engineer to pull out, and the marshal would not let me get on." Mr. Williams, who had come to the train to receive some express goods, testified to substantially the same occurrence at the baggage car, except that the baggage man said it would cost twenty-five cents to carry the dog. He testified as follows as to what occurred after the plaintiff was told he could not put his dog in the baggage car without paying: "Mr. Gregory turned, and walked away, and as he walked away said he had a first-class ticket, and was going to take his dog with him in the coach, and he went and got into the coach, and took the dog with him. The brakeman and conductor then went into the coach. I stepped on the platform of the coach, and heard the conductor talking with Mr. Gregory. He told Mr. Gregory he would have to put the dog in the baggage car. Mr. Gregory said he had been to the baggage car with the dog, and the baggage man wouldn't take him until he gave him twenty-five cents. Mr. Gregory said he did not have twenty-five cents; that if he did have it he would give it, and put the dog in the baggage car. The conductor then said, "Your dog can't ride in this coach, and you will have to take him off." Gegory said he had a first-class ticket, and he was not going to leave his dog. They had more or less talk that I can't remember, but the conductor said: 'You'll have to get off. Your dog can't ride in this coach.' Then Gregory told him that he and his crew could not put him off, and the condutor said, 'I will show you that you can be put off,' or 'taken off the train,' and stepped off the coach, and called the marshal of the town. The marshal came, and told Mr. Gregory he would have to get off the train with the dog. Mr. Gregory said to the marshal, 'I suppose you

have the right to take me off,' and he got up, and took his dog, and walked out of the coach with the marshal."

II.   Appellant's first contention is "that it was not for the court to decide whether it was a reasonable or proper regulation which prohibited the dog's riding in the smoking car with the plaintiff, but a question of fact for the jury to decide."

Appellant refers to no authority, and the only case we find that seems to hold the rule contended for is *State v. Overton,* 24 N. J. Law, 435. An examination of that case will show that it is not authority for the rule. The question is discussed at length, a distinction made between by-laws and regulations affecting third persons, and a seeming holding that the reasonableness of the former should be determined by the court, and of the latter by the jury. The court says, however:   "Here was no evidence of any by-law, or of any regulation made by the company affecting the rights of passengers upon the reasonableness or validity of which either court or jury was called upon to decide. The right of the passenger rested upon his contract." Again, the court says, "But there was, in reality, no such question involved in the present case." In that case the defendant, a conductor, was prosecuted criminally for ejecting a man from the train who had purchased a ticket from one point to another, and had stopped at an intermediate station without a stop-over check, and sought to ride on the defendant's train on the train check of the first conductor. In *State v. Chovin,* 7 Iowa, 204, the defendant, a conductor, was prosecuted for ejecting a man who refused to pay ten cents more than the price of a ticket, exacted from passengers who did not procure tickets. After recognizing the right of the company to make reasonable regulations for the safety and security of its passengers to facilitate its business, and for the conduct

of passengers while on its trains, the court says:
"In *State v. Overton*, 24 N. J. Law, 435, it was held that
the reasonableness of the regulations was a question
of fact for the jury; and to this we may add that all
regulations will be deemed reasonable which are suit-
able to enable the company to perform the duties
it undertakes, and to secure its own just rights
in such employment; and also such as are necessary
and proper to insure the safety and promote the com-
fort of passengers,"—referring to *Commonwealth v.
Power*, 7 Metcalf (Mass.) 596. This might seem
decisive of the question, but, referring to that case, it
will be seen that it was tried to the court without the
intervention of a jury; therefore this question could
not arise, and what is said is not decisive of the ques-
tion, but merely incidental to the matters being con-
sidered. The question is not referred to in the *Power
Case*. Justice Stockton, dissenting, says: "Whether
the reasonableness of any given law, rule, or regulation
is to be determined by the court, or is a question of fact
for a jury, has not been settled by any preponderance of
authority." In *Railroad Co. v. Fleming*, 14 Lea. 145, it
is said: "The rules and regulations of a railroad cor-
poration, as of other corporations, are subject to the
requirements that they must be reasonable. Whether
they are reasonable or not, is a question for the court,
and not for the jury, and this is for the obvious reason,
that there must be uniformity in the construction,
which can always be obtained by the decision of the
court. If left as a question of fact to the jury, the result
might vary with each jury, and the corporation could
have no certainty that any rule would stand the test with
every jury. Ordinarily, too, jurors are not aware, and
cannot readily be made aware, of all the reasons
calling for the rule,"—referring to *Vedder v. Fellows*,
20 N. Y. 126, which fully sustains the conclusion. Sec,
also *Avery v. Railroad Co.*, 121 N. Y., at page 44 (24 N. E.

Rep. 23).   In *Railroad Co. v. Wittemore*, 43 Ill. 420, the
lower court left it to the jury to say whether a rule
requiring passengers to surrender their tickets was
reasonable, and the supreme court said: "This was
error.   It was proper to admit testimony, as was
done, but, either with or without this testimony, it
was for the court to say whether the regulation was
reasonable, and, therefore, obligatory upon the passen-
gers.   The necessity of holding this to be a question
of law, and, therefore, within the province of the
court to settle, is apparent from the consideration that
it is only by so holding that fixed and permanent
relation can be established.   If this question is to be
left to juries, one rule would be applied by them to-day
and another to-morrow.   In one trial a railway would be
liable, and in another, presenting the same question,
not liable.   Neither the companies nor passengers
would know their rights or their obligations.   A fixed
system for the control of the vast interests connected
with railways would be impossible, while such a system
is essential equally to the roads and to the public."
In *Chilton v. Railroad Co.*, 114 Mo. 89 (21 S. W. Rep.
458), one contention was whether a regulation which
excluded colored women from the ladies' coach was
reasonable.   The court says: "Whether this regula-
tion, the facts being undisputed, was a reasonable
one, was a question of law, to be determined by the
court; and in submitting it as a question of fact to the
jury, the court committed error."   In *Railroad Co. v.
Wysor*, 82 Va. 250, it is said, at page 261:   " The rea-
sonableness of the rules and regulations of a railroad
company is a question of law addressed to the courts."
See, also, *Commonwealth v. Worcester*, 3 Pick. 462, and
*Vandine Case*, 6 Pick. 187.   We are of the opinion that
reason and the weight of authorities are in favor of the
rule that the reasonableness of regulations prescribed
by railroad corporations for the safety, comfort, and

conduct of its passengers, and for the proper manage-
ment of its business, are questions for the courts to
decide.   We think the court properly held that the reg-
ulations prohibiting persons from taking dogs with them
to be carried on cars used for the carriage of passengers,
and the rule requiring pay for carrying them in baggage
cars, are reasonable, and were properly held to be such
by the trial court.

III.   Appellant's further contention is that the
most that could be claimed would be that the conduc-
tor could have the dog removed from the car, but not
the plaintiff.   If plaintiff had removed his dog
from the car, unquestionably he had a right to
remain thereon.   This he did not do, nor offer
to do.   It is evident that when he failed to get his dog
carried in the baggage car, he determined to keep him
with him in the smoking car.   As he walked away
from the baggage car, he said "he had a first-class
ticket, and was going to take his dog with him in the
coach," and did so.   He was told, "Your dog can't ride
in this coach, and you will have to take him off."   To
this he replied that "he had a first-class ticket, and he
was not going to leave his dog."   It is evident that the
plaintiff not only refused to remove the dog, as it was
his duty to do, but insisted on keeping him in the car.
The rule that prohibited this is reasonable, and, as the
plaintiff refused to remove the dog, the conductor was
justified in removing both from the car, and did so in
a proper manner.

It is argued that plaintiff is entitled to recover
the value of his ticket from Alton to Hawarden; but
not so, as he had forfeited his right to ride on
the train by refusing to comply with a reasona-
ble regulation.   Under the evidence, there was
no question to be submitted to the jury, and no evi-
dence to support a verdict for the plaintiff.—AFFIRMED.