COMMISSIONER OF INTERNAL REVENUE
v. WILSON.

SAME v. McCRORY.
Nos. 7343, 7344.

Circuit Court of Appeals, Fifth Circuit.
April 4, 1935.

---

768

Frank J. Wideman, Asst. Atty. Gen., Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Frank B. Schlosser, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Harry C. Weeks and A. H. Britain, both of Wichita Falls, Tex., for respondents.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The respondents were married men residing in Texas and under its matrimonial community laws during the years 1925 and 1926. Incomes received by them respectively as beneficiaries of the same trust were held by the Board of Tax Appeals to be community incomes and were thus taxed. The Commissioner here contends that such incomes were altogether the separate property of the respondents; but if not, so much of them as came from bonus and royalty payments from oil and gas properties were separate. The trust involved is sufficiently set forth in McCrory v. Commissioner (C. C. A.) 69 F.(2d) 688. We there held that the trust deed conveyed title to the trustee for the use and benefit of the twenty-seven beneficiaries, of whom respondents are two. The provision for annual distribution is: "(e) All other income after setting aside a sufficient amount of the revenues and income and proceeds of the sale of all or any part of the trust estate which may be necessary to pay off and satisfy all of the expenses and taxes set out in paragraphs (a), (b), (c) and (d) next above, together with a reasonable surplus necessary and proper in the performance of the duties hereunder, shall be distributed to the beneficiaries hereunder each and every

year hereafter on or before Dec. 31st of each year." The beneficiaries do not get any fixed annuity or annual money gifts. They get the residual income of the trust property each year and the proceeds of any property that is sold. The proceeds of ordinary sales of trust property are not here involved; but what has been deemed income includes lease rentals for deferred drilling on oil and gas properties and proceeds of royalty oil sold, which require special consideration.

Income which accrues to the matrimonial community in Texas belongs equally to husband and wife and is to be taxed one-half to each. Hopkins, Collector, v. Bacon, 282 U. S. 122, 51 S. Ct. 62, 75 L. Ed. 249. The nature and extent of the community interest depends on the state law. Poe, Collector, v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239. The Texas Constitution, article 16, § 15, declares that "all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property." Prior to 1917, the statute law defined her separate property in the same words, adding, "as also the increase of all lands thus acquired"; and the husband's separate property was defined in like words. Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 4621. "Increase" has never been supposed to include rents. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799. The community property embraces all acquisitions of either husband or wife during marriage except that which is the separate property of either. Article 4622. In 1917 (Acts 1917, c. 194, § 1) an act was passed which added to the definition of the separate property of each the further words, "and the rents and revenues derived therefrom"; and these changes made by the act were readopted in the Rev. Civil Stats. of 1925, arts. 4613, 4614. During 1925 the Supreme Court of Texas held the statutory effort to add to the wife's separate property the rents and revenues arising from it during marriage was contrary to the Constitution and void. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799. The rents and revenues of the wife's separate estate, therefore, still go to the community. It is nevertheless urged that since the Constitution does not define the husband's separate estate there is nothing to render ineffective the statutory extension of it. We think otherwise. The whole course of legislation indicates a pur-

pose to treat husband and wife alike in fixing their separate estates as against the community. The act of 1917 in a single paragraph changed both definitions by adding the same words to each. What was thereby withdrawn from the community to be the separate property of the husband was balanced by what was withdrawn for the wife. There is no likelihood that the Legislature would have taken from the community the revenues of the husband's separate estate except in conjunction with a like concession to the wife. "The connubial partnership from which the community estate results is founded upon principles of exact equality and justice as to property rights of the spouses." Schmidt v. Huppmann, 73 Tex. 112, 115, 11 S. W. 175, 176. "It is settled law, and now a familiar rule, that where a statute contains an unconstitutional provision, and another which, if standing by itself, would be valid, the latter will be given effect, provided they are so clearly independent of each other that the court can say that the Legislature would have passed it if the former had been omitted. On the other hand, if they be so connected one with the other, or so dependent one upon the other, that it is apparent that the Legislature would not have passed the act, except as a whole, then the entire statute must fall." Texas & P. R. Co. v. Mahaffey, 98 Tex. 392, 84 S. W. 646, 648. Especially will both provisions fall together when one is the consideration of or compensation for the other. Gerhardt v. Yorktown Independent School District (Tex. Civ. App.) 252 S. W. 197. Both in the original act of 1917 and in the Rev. Stats. of 1925, the two provisions under discussion are so plainly mutual that the unconstitutionality of one should be held to defeat the other also. All doubt on the point is removed by the legislative declaration to that effect in the statute which formally repealed the provisions. Acts 1929, p. 66, c. 32. Therefore the ordinary rents and revenues of the separate property of the husbands here involved belong to their several communities. But their interests in the corpus of this trust are their separate property though acquired since marriage, because acquired by gift.

■ It is argued that the result should be otherwise because the husbands do not get the revenue directly from the property but through the hands of the trustee and subject to the expenditures which he is authorized to make. But the trustee is bound to act always for the benefit of the beneficiaries and to divide the net results among them. All net income and corpus ultimately go to them. The beneficiaries receive the income as income. The corpus is theirs in equity, the legal title being conveyed to the trustee expressly for their benefit. In Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, where the trust instrument did not expressly give the corpus to the beneficiary but only the income, it was held that the payments were taxable income from a corpus impliedly given. Income accruing from the separate equitable estates of the husbands during the marriage though collected and paid over by a trustee belongs to their respective communities.

■ The "delay rentals" on oil and gas leases are rents within the rule just announced. They accrue by the mere lapse of time like any other rent. They do not depend on the finding or production of oil or gas and do not exhaust the substance of the land. While having some likeness to a bonus payment which is held to be advance royalty, Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318; Burnet, Commissioner, v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199, the delay rental is not paid directly or indirectly for oil to be produced, but is for additional time in which to utilize the land. We hold it to be rent. Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779, 783; Sneed v. Commissioner, 30 B. T. A. 1121.

■ On the other hand, royalties, including bonus, are not paid for time but for oil and gas taken out, and represent an actual removal and disposition of the contents of the soil. In some states, as for instance Louisiana, the law looks to the fugaciousness of oil and gas and considers that they belong to no one until captured and confined, so that an oil and gas lease is only a contract for the use of the land for the purpose of capture, and what is paid is rent. In Texas oil and gas in place in the soil are by the established rules of property a part of the realty and capable of separate ownership and conveyance. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Stephens v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Waggoner Estate v. Siegler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. When sold in the ground, the proceeds are the proceeds of sale of land and not the

rents or revenues from it. The royalties under an ordinary oil lease are such proceeds and not rents. State v. Hatcher, 115 Tex. 332, 281 S. W. 192. By Texas law the lessee under the ordinary lease retaining a one-eighth royalty acquires a title to seven-eighths of the oil in the ground. When the oil is produced, the lessor owns, because he has never ceased to own, an undivided one-eighth. His oil has an added value at the surface, which value is the principal consideration received for the conveyance of the seven-eighths to the lessee. In the case last cited the lessor did not retain any oil, but the royalty was one-eighth of the value of the oil produced. Nevertheless, the money royalties paid were held to be the proceeds of corpus. In Stephens v. Stephens (Tex. Civ. App.) 292 S. W. 290, where royalty of one-eighth of the oil was reserved in a lease of the separate property of the wife and the issue was whether the proceeds of the oil were separate or community property, they were held to be separate. This well-considered case we followed in Chesson v. Commissioner (C. C. A.) 57 F.(2d) 141, and the Board of Tax Appeals applied it where the leases were of the husband's separate property in Sneed v. Commissioner, 30 B. T. A. 1121. It is true that Texas royalties are held notwithstanding the local law not to be proceeds of sale but taxable income within the meaning of the federal Revenue Acts, so as to give a uniform nation-wide application of those acts. Burnet, Commissioner, v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199. But the question here is not the taxability of the royalties but the ownership of them. Whether the wife owns or does not own one-half of them in community depends directly on the state laws, the federal tax being imposed accordingly. Poe, Collector, v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239. Uniformity as respects taxation of community interests is not demanded by present tax laws, one result obtaining in California and another in Washington and Louisiana and. Texas according to the laws of each state. United States v. Robbins, 269 U. S. 315, 40 S. Ct. 148, 70 L. Ed. 285; Poe, Collector, v. Seaborn, supra; Hopkins v. Bacon, supra; Bender v. Pfaff, 282 U. S. 127, 51 S. Ct. 64, 75 L. Ed. 252. Therefore so much of the trust income of respondents as can be shown to be derived from royalties is their separate property. In the accounting, outlays by the trustee specially connected with these items are to be considered, and also a fair proportion of the general expenses of the trust, so as to ascertain what part of the net payment to the beneficiaries really came from royalties. The petitions for review are sustained and the Board of Tax Appeals is directed to proceed accordingly, hearing further evidence if necessary.